# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| ANGELA ELVITA ROSS, <br><br> Plaintiff, <br><br> v. <br><br> JONATHAN R. O'HARA, <br><br> Defendant. | CAUSE NO.: 2:18-CV-118-HAB-APR |

## OPINION AND ORDER

This matter is before the Court on Defendant Jonathan R. O'Hara's Motion for Summary Judgment [ECF No. 18] on Plaintiff Angela Elvita Ross's Complaint alleging violations of the Fair Debt Collection Practices Act (FDCPA). For reasons stated in this Opinion and Order, the Motion will be denied.

## STATEMENT OF FACTS

In 1998, Wal-Mart obtained a judgment against Plaintiff in Gary City Court in Gary, Indiana, related to an insufficient funds check that Plaintiff wrote in 1997. Several motions for proceedings supplemental were filed from 1998 through 2005, but no service was obtained. When Defendant, who is an attorney, learned that Plaintiff lived in Jacksonville, Florida, he filed another proceedings supplemental motion in October 2005 on behalf of his client. Plaintiff did not appear for an examination as to assets in Indiana, and a contempt citation was issued for her to appear in December 2005. She did not

appear, and a bench warrant body attachment was issued for her arrest based on the failure to appear.[1]

In early 2017, Defendant learned through an internet skip tracing program that, since 2005 when the body attachment was issued, Plaintiff had moved to a different address in Jacksonville, Florida. On March 23, 2017, Defendant sent a letter (the "Letter") to Plaintiff in Jacksonville, Florida, attempting to collect the debt. The Letter was addressed to Angela E. Ross aka Briana Elise Ross-Williams. Briana Elise Ross-Williams is not an alias. She is Plaintiff's college-aged daughter, and the two lived together in Jacksonville, Florida. However, Defendant maintains that the skip tracing program showed the social security number for Plaintiff, Angela Ross, was also attributed to Briana Ross Williams.

The Letter purports to collect a debt related to "'Walmart Stores, Inc, #1618 vs. Angela E. Ross Aka Briana Elise Ross-Williams" with a total amount due of $1,040.00. (3/23/17 Letter, Ex. A to Pl.'s Compl., ECF No. 1-1.) The Letter states,

> Please find enclosed a copy of a motion and order I have filed with the Court. This motion and order was issued because you failed to appear at a hearing on contempt filed by the Court. This matter is now very serious and you could be arrested at any time. You basically have 2 options right now. If you pay the amount due mentioned above, I will file a motion to have the bench warrant-body attachment recalled and that will be the end of the case. If you are unable to pay the full amount, then you will need to talk to me about a plan of repayment. You will be required to put an adequate amount down to have the bench warrant-body attachment recalled and make payment arrangements on this rest owed. Please contact my office IMMEDIATELY when you receive this letter to discuss with us what you intend to do. Make your payment payable to "Jonathan R. O'Hara, Trustee".

---

[1] These particularly facts are taken from Defendant's Affidavit in Support of Motion for Summary Judgment [ECF No. 18-1]. The court records that are the subject of these statements are not in the record before the Court.

2

(*Id.*)

**STANDARD OF REVIEW**

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must marshal and present the Court with evidence on which a reasonable jury could rely to find in its favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). A court must deny a motion for summary judgment when the nonmoving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (citations omitted). A court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

Facts that are outcome determinative under the applicable law are material for summary judgment purposes. *Smith ex rel. Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). Although a bare contention that an issue of material fact exists is insufficient to create a factual dispute, a court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Additionally, a court is not "obliged to research and construct legal arguments for

3

parties, especially when they are represented by counsel." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011).

**ANALYSIS**

The FDCPA was enacted to eliminate the "use of abusive, deceptive, and unfair debt collection practices" 15 U.S.C. § 1692. To that end, it prohibits the use of "false, deceptive, or misleading representation or means in connection with the collection of any debt." *Id.* § 1692e. Additionally, § 1692d prohibits a debt collector, generally, from engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of the debt. Without limiting the general application of the statute, 15 U.S.C. § 1692d(1) through (6) goes on to provide a non-inclusive listing of six specific types of prohibited conduct ranging from threats and violence to obscene language and telephone harassment.

**A.     False, Deceptive, or Misleading Statements (§ 1692e)**

The Seventh Circuit instructs that FDPCA claims should be evaluated through "the eyes of an 'unsophisticated debtor.'" *McMillan v. Collection Prof'ls, Inc.*, 455 F.3d 754, 758 (7th Cir. 2006) (quoting *Gammons v. GC Servs. Ltd. P'Ship*, 27 F.3d 1254, 1257 (7th Cir. 1994)). This is an objective standard that "protect[s] consumers who were not sophisticated, while at the same time . . . allowing a reasonableness inquiry to ensure that debt collectors [are] not liable for 'unrealistic or peculiar' interpretations of collection letters." *Id.* at 758 n.3; *see also Durkin v. Equifax Check Servs.*, 406 F.3d 410, 414 (7th Cir. 2005). "[I]in some cases 'the literal truth may convey a misleading impression' that violates § 1692e." *McMillan*, 455 F.3d at 761 (quoting *Gammons*, 27 F.3d at 1258

4

(Easterbrook, J., concurring)). However, courts should refuse to "entertain a plaintiff's bizarre, peculiar, or idiosyncratic interpretation of a collection letter." *McMillan*, 455 F.3d at 758 (citing *Durkin*, 406 F.3d at 414).

Plaintiff alleges that several aspects of the Letter were false or misleading, and thus violative of 15 U.S.C. § 1692e. She asserts that the Letter overstates the threat of arrest and underestimates the legal defenses against nonpayment. Because she lived in Florida, it is not even clear that she could be arrested. Plaintiff notes that Defendant has made no showing that he registered the judgment in Florida. *See* Fla. Stat. Ann. § 55.505 (Florida Uniform Enforcement of Foreign Judgments Act). Additionally, the Letter purports to leverage the threat of an arrest as a means to collect the debt rather than to compel attendance in court to see if collection is, in fact, even permissible under state law. The Letter ties recall of the body attachment to how much Plaintiff is willing to pay: "[y]ou will be required to put an adequate amount down to have the bench warrant-body attachment recalled." However, a consumer has more options than the two Defendant identified in the Letter—pay in full or make payment arrangements—to respond to the body attachment. The consumer can, for example, voluntarily appear in court and claim statutory exemptions or challenge personal jurisdiction, file a motion to quash the body attachment with an agreement to appear at a future hearing, or file for bankruptcy.

Defendant argues that the Letter's inclusion of the body attachment and arrest is true and, therefore, does not violate the FDCPA. The reason the body attachment was issued was accurately communicated as relating to Plaintiff's failure to appear in court as

ordered. Defendant also contends that it was true, in the general sense, that she "could be arrested at any time" where the word "could" is properly interpreted. He argues that

> no statement is absolutely true in all circumstances as to all persons. In gauging language to debtors to sufficiently warn them of the natural consequences of failing to respond to the collection process, it is impossible to provide meaningful warnings to debtors which will fit all circumstances. For instance, an attorney debt collector who has obtained a judgment against a debtor may state that a judgment has been entered and the debtor's wages "could" be garnished or that the judgment "could" adversely affect the debtor's credit. This may not apply to all debtors in every situation. A debtor may be receiving social security and thus there are no wages to garnish. A debtor may already have terrible credit so another negative [sic] may have no real effect.

(Mot. for Summ. J. 9, ECF No. 18.) Defendant argues that the statement is not misleading with respect to the consequence of Plaintiff's failure to come to Gary City Court.

In a similar vein, Defendant argues that his statement that Plaintiff had two options "right now" was not deceptive or misleading, as he was not saying that those were the *only* options available to Plaintiff for *all time*. He asserts that, because the order authorizing an arrest was already in place, any arrest or imprisonment would not be because Plaintiff failed to pay a debt. It was not his responsibility, Defendant argues, to act as an advocate for Plaintiff and inform her of all the options available to her to respond to the court's order. Defendant argues that his Letter was, in essence, an offer to settle "the problem involving the writ of body attachment which was issued" while also representing the interests of his client. (Mot. for Summ. J. 12; *see also id.* at 13 (arguing that the Letter "plainly states what 2 options the defendant debt collector would accept to resolve the problem").)

6

The statute's prohibition on the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt" is "designed to provide information that helps consumers to choose intelligently." *Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 757 (7th Cir. 2009). The inquiry under § 1692e is a fact-bound determination of how an unsophisticated consumer would perceive the letter, *McMillan*, 455 F.3d at 759, and more than one manner of proof exists for a plaintiff to prove a claim, *id.*, 455 F.3d at 759–60; *see also Ruth v. Triumph P'ships*, 577 F.3d 790, 800 (7th Cir. 2009). Here, Plaintiff has submitted the Declarations of two attorneys with experience representing indigent clients in consumer matters. Their testimony concerning the likely interpretation that would be given to the Letter are sufficient to convince this Court that Defendant has not established that he is entitled to summary judgment.

Plaintiff also claims that misstating that her daughter was an alias was a false statement in an attempt to collect a debt. Defendant argues that he believed the daughter's name was Plaintiff's alias because a skip tracing program he used in early 2017 reported the same social security number for both names. However, the reason for the mistake is not relevant to the motion for summary judgment. *See Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th Cir. 2000) ("Section 1692e applies even when a false representation was unintentional."). Plaintiff, of course, would have known that the purported alias was, in fact, her daughter's name, and not an alias. However, the impact of being informed that a debt collector believes it to be an alias is another matter. The alias does not just appear as an aside; the Letter begins "Dear Ms. Brianna Elise Ross-Williams." In addition, the Letter purports to be related to a case that is captioned

"Walmart Stores, Inc. #1618 vs. Angela E. Ross Aka Briana Elise Ross-Williams."[2] Plaintiff testified by affidavit that the information caused her to fear that her daughter could be arrested under the mistaken belief that she was Plaintiff, or that her daughter's credit would be negatively impacted, and there is no evidence that this was an objectively unreasonable assumption. Whether this is information that impacted Plaintiff's ability to choose her options intelligently is a question that bars the entry of summary judgment.

The Court notes that it might have occasion to confront the question of Defendant's knowledge if he were attempting to establish the affirmative defense provided by § 1692k(c). Under that subsection, which is entitled "Intent," a debt collector that violates § 1692e, or any other substantive provision of the FDCPA, can avoid liability by proving by a preponderance of the evidence that (1) the violation was unintentional, resulting from a "bona fide error," and (2) that error occurred "not-withstanding the maintenance of procedures reasonably adapted to avoid any such error." *Jenkins v. Heintz*, 124 F.3d 824, 828 (7th Cir. 1997). At this stage of the proceedings, Defendant has not put sufficient evidence into the record that could established his entitlement to the bona fide error defense.

Giving Plaintiff the inferences to which she is entitled at the summary judgment stage, the Court finds that genuine issues of material fact preclude the entry of judgment as a matter of law in Defendant's favor. Plaintiff has designated evidence to suggest that

---

[2] The timing of Defendant's discovery of the information that led him to believe Plaintiff had an alias begs the question whether this is the official case caption, or whether Defendant added the alias for purposes of the Letter.

a reasonable unsophisticated consumer would find that the statements about the body attachment, potential arrest, and options to pay the debt to avoid arrest were misleading or deceptive, without resorting to an ingenious, bizarre, or idiosyncratic reading.

**B.      Harassing, Oppressive, or Abusive Conduct (§ 1692d)**

"A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. This section prohibits harassing or abusive conduct, such as threats of violence, using abusive language, or placing annoying telephone calls. *Id.* In her Complaint, Plaintiff alleges that Defendant's strategy of obtaining a body attachment in a distant forum combined with a letter threatening arrest if payment is not made is conduct in the collection of the debt, the natural consequence of which is to harass, oppress, or abuse a person in violation of 15 U.S.C § 1692d. In her response to Defendant's Motion for Summary Judgment, Plaintiff adds that it is the threat of arrest at any time, combined with the "two options" claim, that misrepresents the options and legal rights and can be construed as a threat to scare a consumer into making an immediate payment. In other words, by overstating the threat of arrest and underestimating the legal defenses against nonpayment, Defendant engaged in conduct the natural consequence of which is to harass, oppress, or abuse.

The Defendant, in his motion, argues that it is not per se a violation of § 1692d to file for a writ of body attachment on an individual who resides out-of-state. Defendant notes that the FDCPA does not displace state court judicial remedies. He argues that the Letter did not threaten to do anything to Plaintiff, but merely stated what had occurred

9

in state court, and provided a copy of the pleading along with the Letter. He claims that it would be more oppressive and harassing to fail to advise a debtor of the body attachment, and to let them be "surprised by being arrested with no warning than to be warned about the body attachment and given a way to avoid the consequence of same." (Mot. for Summ. J. 6.) Defendant argues that Plaintiff has only offered her own subjective beliefs about the impact of the Letter, and appears to be equating "mere inconvenience of travel with harassment, oppression and/or abuse." (*Id.* 7.)

Although Defendant was within his rights to use state court procedures to attempt to collect the debt, the inquiry extends beyond the use of those procedures. The potentially misleading nature of the communications related to these proceedings presents an added layer. The Court finds Defendant's attempts to portray his Letter as a service to Plaintiff, with no potential to be considered oppressive, harassing, or abusive, to be disingenuous. Although this case does not fit neatly within the scenarios typically covered by § 1692d, *see, e.g.*, *Horkey v. J.V.D.B. & Assocs., Inc.*, 333 F.3d 769, 773–74 (7th Cir. 2003) (finding § 1692d violation where defendant, who had been told not to call plaintiff at work, called plaintiff's coworker and said "tell Amanda to stop being such a [expletive] bitch"); *Sanchez v. Client Servs., Inc.*, 520 F. Supp. 2d 1149, 1160–61 (N.D. Cal. 2007) (finding § 1692d violation where defendants called plaintiff's workplace fifty-four times over the course of several months, including multiple calls on the same day), the Court cannot say, as a matter of law, that Defendant's conduct would not qualify. Ordinarily, whether conduct harasses, oppresses, or abuses will be a question for the jury.

*Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 330 (6th Cir. 2006) (quoting *Jeter v. Credit Bureau*, 760 F.2d 1168, 1179 (11th Cir. 1985)).

Here, the record does not contain the state court pleading that Defendant stated accompanied the Letter. The contents of that attachment, if it was provided to Plaintiff, may impact the claim. Second, Defendant's argument does not address the totality of Plaintiff's claims with respect to the § 1692d claim, and the parties' arguments leave room for further development of what would be the "natural consequence" of the entirety of Defendant's conduct. Further, Plaintiff has, for purposes of defeating summary judgment, sufficiently identified through the affidavits of the lawyers what contributed to the coercive nature of the attempt to obtain payment of the debt.

C.   **Unfair or Unconscionable Means (§ 1692f)**

Plaintiff argues that Defendant's Letter is an unfair means to collect a debt in violation of 15 U.S.C. § 1692f. This statutory reference does not appear in Plaintiff's Complaint. Neither does the Complaint allege that Defendant's means were unfair or unconscionable. "[A] plaintiff 'may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.'" *Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012) (first citing *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002); then quoting *Shanahan v. City of Chi.*, 82 F.3d 776, 781 (7th Cir. 1996)). In addition, Plaintiff's § 1692f claim, as asserted in her response brief, relies on the same conduct that formed the basis of her claim under § 1692e, and there is some authority for the proposition that § 1692f claims that are predicated on the same factual allegations underlying another § 1692 claim fail to state an independent basis on which relief can be

11

granted. *Hayes v. Receivables Perf. Mgmt., LLC*, Case No. 17-cv-1239, 2018 WL 4616309, at *6 (N.D. Ill. Sept. 26, 2018); *Heffron v. Green Tree Servicing, LLC*, No. 15-CV-0996, 2016 WL 47915, at *5 (N.D. Ill. Jan. 5, 2016); *Stewart v. Bierman*, 859 F. Supp. 2d 754, 765 (D. Md. 2012); *Foti v. NCO Fin. Sys., Inc.*, 424 F. Supp. 2d 643, 667 (S.D.N.Y. 2006).

At this point in the proceedings, the Court need not delve further into the potential viability of a § 1692f claim because, as stated above, no such claim appears in the Complaint.

## CONCLUSION

For the reasons stated above, the Court DENIES Defendant's Motion for Summary Judgment [ECF No. 18].

SO ORDERED on August 14, 2019.

     s/ *Holly A. Brady*
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT