# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

ANGELA ELVITA ROSS,

        Plaintiff,

        v.

JONATHAN R. O'HARA,

        Defendant.

CAUSE NO.: 2:18-CV-118-TLS

## OPINION AND ORDER

This matter is before the Court on various motions: (1) Plaintiff's Motion for Partial Summary Judgment [ECF No. 71]; (2) Defendant's Motion for Summary Judgment [ECF No. 76]; (3) Defendant's Motion to Strike Affidavit of Chase Haller [ECF No. 77]; (4) Defendant's Motion to Strike Affidavit of John Brengle [ECF No. 78]; and (5) Plaintiff's Motion to Exclude Defendant's Evidence and Strike Bona Fide Error Defense [ECF No. 83]. However, because the Plaintiff has failed to establish standing, the Court dismisses this case and denies the remaining motions as moot.

## FACTUAL BACKGROUND

In 1998, Walmart obtained a default judgment against the Plaintiff in Gary City Court related to an insufficient funds check the Plaintiff wrote in 1997. Def. Ex. B, ¶¶ 2–4, ECF No. 18-1; *see* Def. Ex. 1, ECF No. 76-1; Def. Ex. 4, ECF No. 76-4. Between 1998 and 2005, several motions for proceedings supplemental were filed, but service on the Plaintiff was not obtained. Def. Ex. B, ¶ 5. The Defendant eventually discovered that the Plaintiff lived in Jacksonville, Florida, so he filed another proceedings supplemental motion in October 2005 to have the Plaintiff appear for an examination as to assets. *Id.* at ¶ 6; *see* Def. Ex. 5, ECF No. 76-5. The

Plaintiff failed to appear, and, as a result, a contempt citation was issued for her to appear in December 2005. Def. Ex. B, ¶ 7; *see* Def. Ex. 6, ECF No. 76-6. When she failed to appear again, a bench warrant body attachment was issued for her arrest. Def. Ex. B, ¶ 8; *see* Def. Ex. 7, ECF No. 76-7; Def. Ex. 8, ECF No. 76-8. Based on the Plaintiff's search of public records, it appears that no judgments were entered against her in Florida. Pl. Ex. D, ¶¶ 6–7, ECF No. 70-2.

More than a decade later, the Defendant determined through an internet skip tracing program that the Plaintiff had moved to a different address in Jacksonville. Def. Ex. B, ¶¶ 11–12. That program also indicated that Angela Ross had the same social security number as "Brianna Ross Williams," *id.* at ¶ 14; however, the Plaintiff explained that "Briana" is her daughter, not an alias, Pl. Ex. E, ¶¶ 6–7, ECF No. 70-2. After the Defendant uncovered this information about the Plaintiff's move, he filed a new motion with the Gary City Court to reissue the warrant as he was unsure whether the original warrant had expired. Def. Ex. B ¶ 15; *see* Def. Ex. 9, ECF No. 76-9; Def. Ex. 10, ECF No. 76-10.

On March 23, 2017, the Defendant sent a letter to "Angela E. Ross Aka Briana Elise Ross-Williams" and addressed it to the Plaintiff's residence in Jacksonville. Compl. Ex. 1, ECF No. 1-1; *see* Pl. Ex. E, ¶ 4. The subject of the letter is "Walmart Stores, Inc. # 1618 vs. Angela E. Ross Aka Briana Elise Ross-Williams, 45HO3-9805-CP-1743," and it provides:

> Please find enclosed a copy of a motion and order I have filed with the Court. This motion and order was issued because you failed to appear at a hearing on contempt filed by the Court. This matter is now very serious and you could be arrested at any time. You basically have 2 options right now. If you pay the amount due mentioned above, I will file a motion to have the bench warrant-body attachment recalled and that will be the end of the case. If you are unable to pay the full amount, then you will need to talk to me about a plan of repayment. You will be required to put an adequate amount down to have the bench warrant-body attachment recalled and make payment arrangements on this rest owed. Please contact my office

2

IMMEDIATELY when you receive this letter to discuss with us what you intend to do. Make your payment payable to "Jonathan R. O'Hara, Trustee".

Compl. Ex. 1. At the top of the letter, the total amount due was listed as $1,040.00. *Id.*

In an affidavit dated March 22, 2020,[1] the Plaintiff describes how the letter harmed her. *See* Pl. Ex. I, ECF No. 71-2. The Plaintiff states that she was confused after reading the letter and was scared that she could be arrested at any time. *Id.* at ¶ 1. She believed her only options were to pay, call the Defendant, or be arrested; but she was afraid that if she called, she could be arrested sooner. *Id.* at ¶¶ 3–4. Because of her fear of arrest, the Plaintiff states that she "was too scared to visit [her] family in Illinois and chose not to go on a trip [she] had previously planned." *Id.* at ¶ 5. She also explains that this letter caused her to be "short" with her family members, that she struggled to do normal activities, including cooking and caring for her family like she used to, and that she was "too scared to go into public." *Id.* at ¶¶ 8–10. Lastly, the Plaintiff states that, had she been informed of other options, "such as writing to the court or setting aside the judgment," she would have pursued those options or, at the very least, traveled to Illinois to see her daughter. *Id.* at ¶ 11.

## PROCEDURAL BACKGROUND

The Plaintiff filed her Complaint [ECF No. 1] on March 22, 2018, alleging that the Defendant's letter violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, et seq. Specifically, she claims that the Defendant engaged in behavior the natural consequence of

---

[1] In the Table of Contents for her exhibits, the Plaintiff's Exhibit I is identified as "Angela Ross Affidavit of 03/21/21." *See* Table of Contents, ECF No. 71-1. The Court notes the discrepancy with the dates because the Court previously said the Plaintiff needs to submit an affidavit or other evidence demonstrating a concrete injury, *see* Mar. 3, 2021 Op. & Order 3, ECF No. 68, and this Affidavit, even though it is dated March 22, 2020, was not submitted with her original motion for summary judgment filed on May 8, 2020, *see* Pl. Exs. A–I, ECF No. 50-2.

which was to harass, oppress, or abuse her in violation of § 1692d,[2] and that the letter made several false or misleading representations in violation of § 1692e. Compl. ¶¶ 14–17, ECF No. 1.

In a previous round of summary judgment briefing, the Plaintiff filed a Motion for Summary Judgment [ECF No. 49], seeking judgment on her § 1692e claim, while the Defendant filed a Motion to Reconsider [ECF No. 56] his original Motion for Summary Judgment. The Court, however, denied these motions without prejudice so that the parties could brief standing in light of recent Seventh Circuit opinions addressing standing in the context of FDCPA cases. *See* Mar. 3, 2021 Op. & Order 2–4, ECF No. 68. The Court also granted the parties leave to refile their motions for summary judgment. *Id.* at 4.

Thereafter, the Plaintiff filed her Motion for Partial Summary Judgment [ECF No. 71] on April 2, 2021, and the Defendant filed his Cross-Motion for Summary Judgment on April 30, 2021 [ECF No. 76]. The parties also traded motions to strike in connection with their motions for summary judgment. *See* ECF Nos. 77, 78, 83. These motions are currently pending as is the standing issue that the Court raised in its previous opinion.

## ANALYSIS

Federal courts are only permitted to decide legal questions that occur in the context of an actual case or controversy. *Alvarez v. Smith*, 558 U.S. 87, 92 (2009) (citing U.S. Const., Art. III, § 2). Part of this principle is the concept of standing, which requires that "(1) the plaintiff suffered a concrete and particularized injury in fact; (2) the injury is fairly traceable to the

---

[2] Although the Complaint cites § 1692(g), *see* Compl. ¶ 14, ECF No. 1, the Court presumes this was a mistake because the quotation she includes comes from § 1692d, *see* 15 U.S.C. § 1692d ("A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."). Similarly, the Plaintiff appears to state in her motion for summary judgment that the Defendant's letter violates 15 U.S.C. § 1692g, *see* Pl. Br. 2, ECF No. 72, but she has not alleged any facts or raised any issues related to the notice provisions under that section.

4

challenged conduct; and (3) the injury is likely to be redressed by a favorable judicial decision."
*Spuhler v. State Collection Serv., Inc.*, 983 F.3d 282, 285 (7th Cir. 2020) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). The burden is on the party invoking a federal court's jurisdiction to establish these elements. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Since this case is at the summary judgment stage, a plaintiff "must 'set forth by affidavit or other evidence specific facts' demonstrating" the standing requirements. *Spuhler*, 983 F.3d at 284 (quoting *Lujan*, 504 U.S. at 561).

As noted in the Court's previous opinion, the Seventh Circuit issued a number of decisions that address standing for FDCPA plaintiffs, specifically as it relates to the "injury in fact" requirement. *See, e.g.*, *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060, 1064 (7th Cir. 2020) ("Many disputes about standing turn on the 'injury in fact' requirement, and these two cases fall within that category."). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560). An injury is particularized when it has a personal and individual effect on the plaintiff, and it is concrete when it is a real, non-abstract injury. *Id.* at 339–40. With that said, intangible harms may be concrete injuries, but courts consider the relationship between the intangible harm and harms that traditionally form the basis for suits under American or English law. *Id.* at 340–41.

Following *Spokeo*, the Seventh Circuit held that a bare procedural violation of the FDCPA is insufficient to create a concrete harm for standing purposes. *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 339 (7th Cir. 2019). The court then extended this understanding to

the substantive provisions of the FDCPA, which are applicable here.[3] *See Larkin*, 982 F.3d at 1066 ("An FDCPA plaintiff must allege a concrete injury regardless of whether the alleged statutory violation is characterized as procedural or substantive." (citing *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1621 (2020))). Thus, a plaintiff cannot simply rely on a FDCPA violation to prove standing but must instead show "that the statutory violation harmed [her] 'or presented an appreciable risk of harm to the underlying concrete interest that Congress sought to protect.'" *Id.* (quoting *Casillas*, 926 F.3d at 333).

In light of this understanding, the Seventh Circuit has rejected a number of injuries common among FDCPA plaintiffs. This includes anxiety, embarrassment, stress, annoyance, intimidation, infuriation, and disgust. *See Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 668 (7th Cir. 2021) (citing *Pennell v. Glob. Tr. Mgmt.*, 990 F.3d 1041, 1045 (7th Cir. 2021); *Gunn v. Thrasher, Buschmann & Voelkel, P.C.*, 982 F.3d 1069, 1071 (7th Cir. 2020)). These types of injuries are "quintessential abstract harms" that do not confer standing on their own. *Id.* Similarly, a plaintiff's confusion does not amount to an injury unless she acted, "to her detriment, on that confusion." *Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067, 1068 (7th Cir. 2020). This might include, for example, confusion that "leads her to pay something she does not owe, or to pay a debt with interest running at a low rate when the money could have been used to pay a debt with interest running at a higher rate." *Id.* But, generally speaking, the plaintiff must show that the letter "led her to change her course of action or put her in harm's way." *Pennell*, 990 F.3d at 1045.

---

[3] The Plaintiff asserts claims under the substantive provisions of the FDCPA by alleging violations of 15 U.S.C. §§ 1692d and 1692e, which, respectively, prohibit "harassment or abuse" and "false, deceptive, or misleading representations" in connection with debt collection. *See Larkin*, 982 F.3d at 1065–66.

Turning to this case, the Plaintiff submitted a new affidavit with her renewed motion for summary judgment that describes various injuries. She describes generally how the letter affected her emotionally, including being "short" with her family, confused by the letter, scared of being arrested and going in public, scared for her daughter, and unable to "function to do normal stuff" like taking care of family members. *See* Pl. Ex. I, ¶¶ 1, 4, 6, 8–10. She also explains that because she thought she could be arrested, she "was too scared to visit [her] family in Illinois and chose not to go on a trip [she] had previously planned." *Id.* at ¶ 5. Finally, she claims that, had the letter informed her of other options, "such as writing to the court or setting aside the judgment, [she] would have pursued those options. At the very least, [she] would have taken [her] daughter to college or visited her had [she] known [she] could not be arrested in Illinois." *Id.* at ¶ 11.

For starters, many of the Plaintiff's purported harms consist of emotional injuries—i.e., stress, fear, and anxiety. While these types of injuries are insufficient to create standing on their own, *see Wadsworth*, 12 F.4th at 668, the Plaintiff provides some additional information like being "short" with her parents and being unable to function as normal. However, when a plaintiff proceeds on purely emotional harms, courts typically require more specific evidence, such as physical manifestations or a medical diagnosis. *See Pennell*, 990 F.3d at 1045; *see also Kasten v. LVNV Funding, LLC*, No. 19-CV-428, 2021 WL 1102163, at *6 (E.D. Wis. Mar. 23, 2021) (explaining that "a plaintiff whose own testimony is the only proof of emotional damages 'must explain the circumstances of [her] injury in reasonable detail; [she] cannot rely on mere conclusory statements'" (quoting *Denius v. Dunlap*, 330 F.3d 919, 929 (7th Cir. 2003))). Here, the Plaintiff's affidavit continues to describe her injuries in largely abstract terms and provides

7

no comparable evidence to show a concrete emotional injury. She has therefore failed to carry her burden at summary judgment to set forth *specific facts* regarding these injuries.

The next injury the Plaintiff describes is her choice not to take a planned trip to visit family in Illinois because she feared being arrested based on the statements in the Defendant's letter. The Plaintiff argues this creates standing because she relied on the letter's statements to her detriment. Pl. Br. 14–15, ECF No. 76. Not only does this injury lack specifics about the trip and the resulting harm, but it also does not assert a cognizable injury under the current FDCPA standing cases.

When describing the types of detrimental acts that might confer standing, the Seventh Circuit focuses primarily on actions related to a plaintiff's debt management. *See, e.g.*, *Markakos v. Medicredit, Inc.*, 997 F.3d 778, 780 (7th Cir. 2021) ("For example, an FDCPA violation might cause harm if it leads a plaintiff to pay extra money, affects a plaintiff's credit, or otherwise alters a plaintiff's response to a debt."); *Spuhler*, 983 F.3d at 286 (explaining that the misleading statement "must have detrimentally affected the debtors' handling of their debts"). District courts in the Seventh Circuit have similarly acknowledged this understanding when describing potential acts that might create standing. *See, e.g.*, *Tataru v. RGS Fin., Inc.*, No. 18-cv-6106, 2021 WL 1614517, at *2 (N.D. Ill. Apr. 26, 2021) ("This most recent line of precedents makes clear that an FDCPA plaintiff must show that the statutory violation caused them to take some detrimental step and mishandle their debt."); *Rodriguez v. Beyer & Assocs. LLC*, No. 19-C-1677, 2021 WL 179596, at *4 (E.D. Wis. Jan. 19, 2021). This does not mean that non-debt management injuries can never suffice for standing purposes; however, the cases suggest that the Plaintiff's harm of cancelling a trip is disconnected from the concrete interests underlying the FDCPA. As the *Spuhler* court explained, the "FDCPA envisions that debtors will use accurate, non-misleading

information in choosing how to respond to collection attempts and how to manage and repay their debts." *Spuhler*, 983 F.3d at 286. The Plaintiff has not tied her cancelled family trip to either the purposes of the FDCPA generally or the specific provisions applicable to the Defendant's statements.

Furthermore, the Plaintiff has not shown any relationship between the harm of choosing not to go on a trip and "a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 578 U.S. at 340–41; *see also Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 463 (7th Cir. 2020) (explaining how unwanted text messages that violate a provision of the Telephone Consumer Protection Act "pose the same *kind* of harm that common law courts recognize"). She briefly mentions in her Complaint that she "believed that the letter inhibited her willingness to freely travel, . . . a loss to her protected liberty interest," *see* Compl. ¶ 11, but she does not raise this argument in her summary judgment brief.[4] The Plaintiff also failed to analogize her injury with any historical comparison at common law. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) (stating that "reputational harms, disclosure of private information, and intrusion upon seclusion" are examples of traditional harms). The Plaintiff's failure to address these issues is further complicated by the lack of specific facts showing the harm she suffered as a result of not going on her trip. Therefore, the Court concludes that the Plaintiff's choice to cancel her trip does not amount to a concrete injury.

---

[4] Although violations of constitutional rights can help establish a concrete injury, *see TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) (explaining that injuries with a close relationship to traditional harms "include harms specified by the Constitution itself"), it is not clear that the Plaintiff's liberty interest in freely traveling would create standing in this case. The right to travel has three components, including "the right of a citizen of one state to enter and leave another state." *Chavez v. Ill. State Police*, 251 F.3d 612, 648 (7th Cir. 2001) (citing *Saenz v. Roe*, 526 U.S. 489, 500 (1999)). However, the Plaintiff's concerns about arrest derive from a legitimate arrest warrant, and restrictions on the right to travel are permissible when there are grounds for arrest supported by probable cause. *Cf. Jones v. Helms*, 452 U.S. 412, 419 (1981) (describing limits on the right to travel when there is probable cause that may justify an arrest).

The Plaintiff finally argues that she was injured because, had the letter informed her of other options, "such as writing to the court or setting aside the judgment," she would have taken those steps. Pl. Ex. I, ¶ 11. "The nonreceipt of information to which a plaintiff is entitled under a statute may amount to a concrete injury, but only if it impairs the plaintiff's 'ability to use [that information] for a substantive purpose that the statute envisioned.'" *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 280 (7th Cir. 2020) (quoting *Robertson v. Allied Sols., LLC*, 902 F.3d 690, 694 (7th Cir. 2018)). In *Lavallee v. Med-1 Solutions, LLC*, for example, the debt collector did not tell the Plaintiff how to dispute her debt as was required by the FDCPA under 15 U.S.C. § 1692g(a). *See* 932 F.3d 1049, 1053 (7th Cir. 2019). This established a concrete injury because it was "reasonable to infer that she would have exercised her statutory rights" of disputing the debt, which would have halted a related collection lawsuit. *Id.* But here, the Plaintiff has not identified a provision in the FDCPA that entitled her to receive the *specific* information about writing to the state court or attempting to set aside the judgment. Nor has she explained how taking those actions would be an exercise of her statutory rights under the FDCPA. Without any clear basis in the statute for the information she seeks or the actions she would have taken, this harm does not amount to a concrete injury.

Ultimately, the Plaintiff has not met her burden at summary judgment to provide evidence of specific facts showing a concrete injury. She instead relied on injuries that have already been rejected as insufficient for standing or described additional abstract harms that are unconnected to the purpose of the FDCPA. Based on the recent developments in FDCPA cases, the Court concludes that the Plaintiff has not identified a concrete injury and her case must be dismissed. And since the Plaintiff lacks standing to bring her claims, the Court does not reach the merits of the parties' remaining motions.

**CONCLUSION**

Based on the foregoing, the Plaintiff's Complaint is DISMISSED without prejudice for lack of subject matter jurisdiction. The Court also DENIES as moot the following motions: Plaintiff's Motion for Partial Summary Judgment [ECF No. 71]; Defendant's Motion for Summary Judgment [ECF No. 76]; Defendant's Motion to Strike Affidavit of Chase Haller [ECF No. 77]; Defendant's Motion to Strike Affidavit of John Brengle [ECF No. 78]; and Plaintiff's Motion to Exclude Defendant's Evidence and Strike Bona Fide Error Defense [ECF No. 83].

SO ORDERED on March 30, 2022.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT